## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| **BITMICRO LLC,** | § | |
| *Plaintiff* | § | |
| | § | |
| **-vs-** | § | **W-22-CV-00335-ADA** |
| | § | |
| **INTEL CORPORATION,** | § | |
| *Defendant* | § | |

## ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE
## TO THE NORTHERN DISTRICT OF CALIFORNIA

Before the Court is Defendant Intel Corporation's ("Intel") Motion to Transfer Venue to the Northern District of California or, in the Alternative, to the District of Oregon. ECF No. 22. Plaintiff BiTMICRO, LLC ("BiTMICRO") opposes the motion. ECF No. 34. Intel filed a reply to further support its motion. ECF No. 37. After careful consideration of the parties' briefs and the applicable law, the Court **GRANTS** Intel's motion to transfer venue to the Northern District of California.

### I.    FACTUAL BACKGROUND

In its complaint, BiTMICRO claims Intel infringes on U.S. Patent Nos. 7,826,243 ("'243 patent"), 9,135,190 ("'190 patent"), 8,010,740 ("'740 patent"), 9,858,084 ("'084 patent"), 10,120,694 ("'694 patent"), and 6,496,939 ("'939 patent") (collectively, the "asserted patents"), which relate to solid state drive and integrated circuit technology. ECF No. 1 ¶¶ 2, 72, 91, 126, 141, 158, 172. BiTMICRO, the owner of the asserted patents, is a limited liability company organized under the laws of the state of Delaware. *Id.* ¶ 5. BiTMICRO's principal place of business is in Reston, Virginia. *Id.* Intel is a corporation organized under the laws of Delaware with its principal place of business in Santa Clara, California. *Id.* ¶ 6. According to BiTMICRO, Intel's

NAND Solid State Drive ("SSD"), Optane SSD, Optane Persistent Memory, RAID Controller, Stratix 10, and Lakefield products infringe upon the asserted patents. ECF No. 22 at 3−4. The Court will refer to these products collectively as the "accused products."

After responding to BiTMICRO's amended complaint, Intel filed the instant motion to transfer. ECF No. 22. Intel does not argue that the Western District of Texas ("WDTX") is an improper venue for this case; instead, it argues that the Northern District of California ("NDCA") or the District of Oregon (DOR) is a more convenient forum, pointing to the location of potential witnesses and the location of relevant records. *Id*. at 1. BiTMICRO contends that the case should remain in the WDTX, pointing to, among other factors, the co-pending action in this Court, speed to trial in this District, and Intel's presence in Austin. ECF No. 34 at 1.

## II.     LEGAL STANDARD

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp*., 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . ." *Id*. "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358

F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

## III.    DISCUSSION

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. Neither party disputes that venue could be proper in the NDCA. ECF No. 22 at 6; ECF No. 34. Intel's headquarters are located in the

NDCA. ECF No. 22 at 6. This Court therefore finds that venue would have been proper in the NDCA had the suit originally been filed there. Thus, the Court now analyzes the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

**A. The Private Interest Factors**

    ***i.***   ***The Cost of Attendance and Convenience for Willing Witnesses***

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" when witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342. When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

According to Intel, its relevant employees are located in California, Oregon, Arizona, Texas, Mexico, England, Poland, India, and Malaysia. ECF No. 22 at 7−10. According to BiTMICRO, its witnesses are located in Texas, South Carolina, and Southern California. ECF No. 34 at 11. Each group of witnesses will be considered below.

1.   Intel Employees in California, Oregon, and Arizona

Intel claims that the accused NAND SSD product was based in Intel's facilities in Folsom, California. ECF No. 22 at 7. Intel has transferred the NAND SSD business to Solidigm. *Id.* However, three current employees, Wilson Fang and Allison Goodman in California and Rick Mangold in Oregon, are knowledgeable about the accused NAND SSD product. *Id.* Intel claims that Annie Foong, Sowmiya Jayachandran, and Rich Mangold in Oregon and Wilson Fang in California possess knowledge of the design and operation of the accused Optane SSD product. *Id.* Intel alleges that Muthukumar Swaminathan, Kunal Khochare, and Sreenivas Mandava in California and Rajat Agarwal, Patrick Ndouniama, Wei Chen, Philip Hillier, and Rick Mangold in Oregon possess knowledge of the accused Optane Persistent Memory features. *Id.* at 8. Intel claims that Pao-heng Huang in Oregon and Steve Gillaspy in California have knowledge of the accused RAID product. *Id.* Intel asserts that Alfredo de la Cruz Nogueiras in California knows about the Stratix 10 SDM hardware. *Id.* at 9. Lastly, Intel argues that Wilfred Gomes, Doug Ingerly, Manoj Lal, and James Shehadi in Oregon, Girish Ramanathan and Priya Walimbe in California, and Pat Stover in Arizona were involved in the development of the accused Lakefield product. *Id.* at 10.

In its response, BiTMICRO complains that Intel's declarants lack credibility because they did not review or understand BiTMICRO's allegations before they identified relevant employees. ECF No. 34 at 13. The Court notes that BiTMICRO only provides evidence to show that one of Intel's six declarants testified that they did not review BiTMICRO's complaint. ECF No. 34-7 at

13:6−14:21. And that declarant mentions other sources for their understanding of BiTMICRO's allegations. ECF No. 34-7 at 14:3-11. BiTMICRO further argues that Intel's employees in California, Oregon, and Arizona would not find the WDTX an inconvenient forum because Intel has discounted rates at hotels in this District and Intel owns private planes that could be used to shuttle its employees to Waco. ECF No. 34 at 2.

The Court agrees with Intel that its identified employees based in California, Oregon, and Arizona are relevant and would find the NDCA a more convenient forum. Intel's identified witnesses were involved in the design and development of the accused products. Further, Intel's identified witnesses in California, Oregon, and Arizona would be able to travel to the NDCA more quickly than to the WDTX. ECF No. 22 at 4−5; *In re Google, LLC*, 2021 WL 4427899, at \*4. The Court rejects BiTMICRO's argument that the declarants are all unreliable because one declarant did not review BiTMICRO's complaint. Intel's position is supported by five other declarations. Further, the declarant that did not review the complaint mentioned other sources for their understanding of BiTMICRO's allegations against Intel. The Court also rejects BiTMICRO's argument that these witnesses will not be inconvenienced because Intel has hotel discounts in this District and private planes available to transport its employees. The relevant consideration here is "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, 2021 WL 4427899, at \* 4. Regardless of whether hotel discounts and convenient transportation is made available to Intel's willing witnesses from California, Oregon, and Arizona,

these witnesses will still be required to travel to a distant forum and will be away from their homes and work for an extended period of time if this case remains in the WDTX.

### 2. Intel Employees in Texas

Intel admits that it has 13 relevant employees within the WDTX that are responsible for maintaining the accused Stratix 10 product. ECF No. 22 at 4; ECF No. 22-35 ¶ 7. Intel alleges that two of its employees in Austin, Kyle Durant and Biun Zhou, are knowledgeable about the accused Stratix 10 product. ECF No. 22 at 9. Further, Intel admits that one employee that implements the accused Persistent Memory features resides in Austin. *Id.* at 8. Intel agrees that the WDTX is a more convenient forum for its employees in Austin. *Id.* But Intel notes that it has more relevant employees in California and Oregon. *Id.* In response, BiTMICRO claims that Intel has 85 engineers in Austin that work on the Stratix 10 product. ECF No. 34 at 13. In its reply, Intel argues that the group of engineers identified by BiTMICRO works on products other than Stratix 10. ECF No. 37 at 3.

The Court concludes that the 13 employees in Austin that work on the accused Stratix 10 product will find the WDTX a more convenient forum. The Court also concludes that the one employee in Austin that implements the accused Persistent Memory feature will also find this Court a more convenient forum. The Court rejects BiTMICRO's argument that Intel has 85 employees in this District working on the accused products. As Intel's declarant's testified, the group of 85 engineers identified by BiTMICRO also work on other Intel products that are not accused in this case. ECF No. 34-7 at 76:24−77:11.

### 3. Intel Employees Abroad

Intel alleges that its employees in Guadalajara, Mexico, Jorge Caamano Pichardo and Arial Bello Tapia, have relevant knowledge of the accused power loss protection feature in the RAID

product. ECF No. 22 at 8. Intel also claims that a "key" architect of Stratix 10, Andrew Draper, is located in London. *Id.* at 9. Further, Intel asserts that teams responsible for maintaining the accused Optane SSD features and implementing the accused Persistent Memory features are located in Poland. *Id.* at 8. Additionally, Intel claims that a team of 25 engineers responsible for maintaining Stratix 10 is located in Bangladore, India.  *Id.* at 9; ECF No. 22-35 ¶ 7. Lastly, Intel alleges that a team of 10−12 engineers responsible for maintaining Stratix 10 is located in Penang, Malaysia. ECF No. 22 at 9; ECF No. 22-35 ¶ 7. Intel claims that its employees abroad will find the NDCA a more convenient forum because direct flights are available. ECF No. 22 at 8−9. In response, BiTMICRO argues that travel to Texas is equally convenient. ECF No. 34 at 14.

The Court agrees with BiTMICRO. Intel's international employees will have to travel a significant distance to either venue and would incur travel, lodging, and related costs in both locations. Even if one venue may be slightly more convenient than the other for Intel's international employees, this difference should not weigh heavily in the analysis of this factor. *In re Apple*, 979 F.3d at 1342. The Court finds that the presence of any relevant Intel employees outside of the United States does not affect the outcome of this factor.

### 4.  BiTMICRO Willing Witnesses

BiTMICRO identifies one willing witness in the WDTX: its prosecution counsel, Joseph Lally, based in Austin. ECF No. 34 at 4−5. BiTMICRO argues that this District is a more convenient forum for this witness. *Id.* BiTMICRO's other witnesses are located in South Carolina and Southern California. *Id.* In its reply, Intel argues that Joseph Lally is not a relevant witness because he did not prosecute any patent-in-suit. *Id.*

With respect to BiTMICRO's Austin-based prosecution counsel, the Court agrees with Intel that this witness is not relevant. Other than claiming that Joseph Lally is based in Austin,

BiTMICRO has not explained his relevancy to this case. The asserted patents were prosecuted by other attorneys. ECF Nos. 1-1, 1-2, 1-3, 1-6. BiTMICRO has not alleged that Mr. Lally is currently engaged in any prosecution matters related to this case. Thus, the Court concludes that Mr. Lally's presence in the WDTX does not weigh against transfer.

As for BiTMICRO's witness in South Carolina, both forums are inconvenient. Even if one venue may be slightly more convenient than the other for this witness, the difference should not weigh heavily in the analysis of this factor. *In re Apple*, 979 F.3d at 1342. Thus, the presence of a BiTMICRO employee in South Carolina does not weigh against transfer. Additionally, the presence of a BiTMICRO employee, Jeff Ronaldi, in Southern California weighs in favor of transfer. While Mr. Ronaldi claims that Waco is not an inconvenient forum, "the Court will not weigh the convenience of a plaintiff's witnesses against transfer under this factor merely because the plaintiff attests that travel to this District would not represent an inconvenience upon witnesses with no apparent connection to this District*." XR Communications, LLC v. Google LLC*, No. 6:21-cv-00625-ADA, 2022 WL 3702271, at *4 (W.D. Tex. Aug. 26, 2022).

### 5.   Conclusion

Because more relevant witnesses would find the NDCA a more convenient forum, the Court finds this factor weighs in favor of transfer.

### ii.   *The Relative Ease of Access to Sources of Proof*

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs

in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

Intel argues that this factor favors transfer because the technical design and development work of the accused products primarily took place in California, Oregon, and Arizona. ECF No. 22 at 13. Intel argues that the majority of the identified witnesses are located in California, Oregon, and Arizona and those witnesses control relevant documents related to the accused products. *Id.* In response, BiTMICRO argues that this factor is neutral because Intel's relevant documents are electronic, making them equally accessible in either forum. ECF No. 34 at 10−11. BiTMICRO also notes that Intel's has facilities in the WDTX and Intel's counsel is located in this District. *Id.* at 10. BiTMICRO argues that its documents are also generally electronic. *Id.* at 11. BiTMICRO also claims that its physical prosecution files for the asserted patents are located in the Austin office of its prosecution counsel. *Id.*

The Court acknowledges that the Fifth Circuit's decision in *In re Planned Parenthood* indicates a shift in the analysis of this factor. The Fifth Circuit has recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in either forum. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id.* But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple, Inc.*, No., 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). To the extent that these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. However, the Court still considers the location of document custodians of electronic documents in

its analysis of this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

The Court agrees with Intel that the majority of its relevant document custodians are located in and near the NDCA. While BiTMICRO complains that electronic documents are accessible in both districts, the location of Intel's document custodians is particularly relevant because Intel's documents are only accessible by authorized Intel employees. ECF No. 37; *In re Apple Inc.*, 2022 WL 1196768, at *4 (rejecting the argument that this factor is neutral where access to electronic documents is restricted to certain employees in the transferee forum). Thus, the Court finds that Intel's electronic evidence weighs in favor of transfer.

The Court concludes that BiTMICRO's electronic evidence does not weigh against transfer. While BiTMICRO alleges that its electronic evidence is equally accessible in both forums, BiTMICRO's electronic document custodians are located in South Carolina and Southern California. Only BiTMICRO's document custodian in Southern California is near either forum. Lastly, with respect to BiTMICRO's physical prosecution files located in Austin, the Court finds that these files weigh against transfer. As the Fifth Circuit has stated, the presence of physical evidence bears more strongly in this analysis. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022).

Because the Court finds that more relevant document custodians likely reside in or near the NDCA rather than the WDTX, the Court concludes that this factor weighs in favor of transfer. However, because BiTMICRO's physical prosecution documents are stored in this District, the Court only finds that this factor weighs slightly in favor of transfer.

### iii.    *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or

(b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order." *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018).

Intel argues that this factor favors transfer because more non-party witnesses are located in the NDCA than in the WDTX. ECF No. 22 at 11. Intel points to inventors of the asserted patents who allegedly reside in the NDCA: (1) Ricardo Bruce, named inventor on the '939, '243, and '190 patents, (2) Rey Bruce, named inventor on the '243 patent, (3) Roland Portman, named inventor on the '939 patent, and (4) Marlon Verdan, named inventor on the '190 patent. *Id.* at 11−12. Intel also notes that directors and officers of BitMicro Networks, the predecessor to BiTMICRO, are located in the NDCA. *Id.* at 12. Intel also argues that third parties with knowledge of the accused product features are located in the NDCA. *Id.* Intel notes that three "key architects" of Stratix 10 Secure Device Manager are no longer employed by Intel and are located in the NDCA. *Id.* And Intel identifies former Intel employees with knowledge of Intel's NAND SSD products who are employed at Solidigm, an NDCA-based company that now owns Intel's NAND SSD business. *Id.*; ECF No. 22-32 ¶ 5. Further, Intel claims that Broadcom employees in the NDCA possess

knowledge of the accused RAID features because ████████████████████████████████████
███████████████████████. ECF No. 22 at 8, 13.

     In its response, BiTMICRO argues that this factor disfavors transfer because more non-party witnesses are located in the WDTX. ECF No. 34 at 15. BiTMICRO argues that two of the named inventors—Rey Bruce and Ricardo Bruce—reside in this District. *Id.* BiTMICRO provides Texas Department of Public Safety records that show that Rey Bruce and Ricardo Bruce both have a Texas driver's license. ECF Nos. 34-13, 34-14.  BiTMICRO also argues that Intel has failed to explain why BitMicro Networks' officers and directors would be relevant to this case. ECF No. 34 at 15. And BiTMICRO claims that witnesses from Solidigm are irrelevant because BiTMICRO's claims are aimed at Intel's infringing activities that took place before Intel sold its NAND SSD business to Solidigm. *Id.* With respect to Broadcom employees, BiTMICRO claims that Intel has failed to identify any relevant Broadcom employees in the NDCA. *Id.* Lastly, BiTMICRO argues that this factor weighs against transfer because some of Intel's "tier one" customers are located in or near this District. *Id.* In its reply, Intel notes that Rey Bruce's last known addresses as of July 29, 2022, includes two addresses in the NDCA and one in the WDTX. ECF No. 37 at 4; ECF No. 37-3.

     The Court concludes that inventors of the asserted patents likely reside in both districts. BiTMICRO does not dispute that two inventors, Roland Portman and Marlon Verdan, reside within the NDCA's subpoena power. ECF No. 34. As for Rey Bruce and Ricardo Bruce, it is unclear which district these inventors reside in. Under this factor, the relevant inquiry is where the non-party witness "resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Here, BiTMICRO has provided evidence showing that Rey Bruce and Ricardo Bruce maintain driver's licenses in Texas. ECF Nos. 34-13, 34-14. But Intel has also shown that

Rey Bruce may maintain a residence in the NDCA. ECF No. 37-3. Intel has also provided LinkedIn profile for Rey Bruce that suggests he reside in the NDCA. ECF Nos. 22-5. Based on the evidence available, the Court concludes that Ricardo Bruce likely resides within the WDTX's subpoena power. But the Court concludes that Rey Bruce may reside within the subpoena power of either forum.

As for BitMicro Networks' officers and directors in the NDCA, the Court concludes that the presence of these individuals within the NDCA's subpoena power weighs in favor of transfer. While BiTMICRO complains that Intel fails to explain how these individuals would be relevant, the Court disagrees. Intel has explained that "[t]hese individuals are likely to have information regarding, at least, the design and commercial success of products embodying the patents-in-suit; marketing, sales, and industry information relevant to alleged indicia of obviousness; and the patentee's economic status and licensing history." ECF No. 22 at 12. BiTMICRO acquired rights in the asserted patents from BitMicro Networks in 2017. ECF No. 34 at 4. At least a few of the individuals named by Intel worked at BitMicro Networks at the time that BiTMICRO acquired its rights. ECF Nos. 22-16, 22-17. One individual named by Intel, Stephen Uriarte, is the former President and General Counsel of BitMicro Networks. ECF No. 22 at 12. Another, Zophar Sante, is the former Vice President of Product Marketing. *Id.* The Court agrees with Intel that these NDCA-based witnesses may possess relevant knowledge regarding BiTMICRO's patents and past commercialization efforts.

With respect to the NDCA-based witnesses with knowledge of Stratix 10 Secure Device Manager, the Court finds that these non-party witnesses weigh in favor of transfer. BiTMICRO does not dispute that these non-party witnesses with knowledge of the Stratix 10 product are relevant. ECF No. 34 at 15. Because the Court agrees with Intel that these individuals likely

14

possess relevant knowledge, the Court concludes that their presence within the NDCA's subpoena power weighs in favor of transfer.

The Court rejects BiTMICRO's argument that witnesses from Solidigm are irrelevant because they do not possess knowledge of Intel's allegedly infringing activities. The identified witnesses from Solidigm are all previous Intel employees. David Plester is a former Intel Principal Engineer who now works at Solidigm. ECF No. 22-32 ¶ 5. David Plester possesses knowledge of "the design and operation of the NAND SSD address indirection table and power loss protection features." *Id.* Further, Ning Wu is a former Intel Principal Engineer who also works at Solidigm. *Id.* And Xin Guo is a former Intel Senior Principal Engineer who now works at Solidigm. *Id.* Ning Wu and Xin Gou possess knowledge of "the design and operation of the NAND SSD SLC caching feature." *Id.* Because all three of these Solidigm employees named by Intel were former Intel employees, they likely possess knowledge of Intel's allegedly infringing conduct.

The Court agrees with BiTMICRO that Broadcom's presence in the NDCA does not weigh in favor of transfer because Intel failed to identify any relevant witnesses from Broadcom. *See Smarter Agent, LLC v. Redfin Corp.*, No. 6:21-cv-01172-ADA, 2022 WL 2835861, at *5 (W.D. Tex. July 20, 2022) (concluding that alleged witnesses from third-party entities did not weigh against transfer because the plaintiff failed to identify any specific witnesses with relevant knowledge). Intel only claims that Broadcom is based in San Jose, California. ECF No. 22-34 ¶ 4. However, Intel fails to identify any specific individuals in San Jose that possess relevant knowledge of the accused products. Further, Intel's declarant stated in a deposition that the two Broadcom employees he works with are based in Georgia and Oregon. ECF No. 34-25 at 10:22−11:17. Thus, the Court concludes that Broadcom's presence in the NDCA does not weigh in favor of transfer.

For a similar reason, the Court rejects BiTMICRO's argument that this factor weighs against transfer because Intel's "tier one" customers reside or have facilities in this District. ECF No. 34 at 15. BiTMICRO fails to identify any witnesses from any of Intel's customers in this District. *Smarter Agent, LLC*, 2022 WL 2835861, at *5. Further BiTMICRO fails to explain why witnesses from Intel's customers in this District would be relevant.

Because a greater number of relevant third-party witnesses reside within the subpoena power of the NDCA, the Court finds that this factor weighs in favor of transfer.

### iv. *All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

In addition to this case, BiTMICRO has filed another case involving three of the six asserted patents in this District: *BiTMICRO LLC v. KIOXIA America, Inc.*, No. 6:22-cv-00331-ADA (W.D. Tex. Mar. 30, 2022) ("KIOXIA Litigation"). Despite this co-pending case, Intel argues that this factor is neutral because the KIOXIA Litigation has not yet reached an advanced stage. ECF No. 22 at 14. Intel also argues that the NDCA has some familiarity with two of the asserted patents—the '243 and '190 patents—from two prior declaratory judgment actions in that

district. ECF No. 22 (citing *SK hynix Inc. v. BiTMICRO LLC*, No. 3:19-cv-03505-EMC (N.D. Cal.) and *Samsung Semiconductor, Inc. v. BiTMICRO, LLC*, No. 3:18-cv-0502-EMC (N.D. Cal.)). In its response, BiTMICRO argues that this factor disfavors transfer because this Court will become familiar with and will resolve issues related to three of the asserted patents through the KIOXIA Litigation. ECF No. 34 at 5. BiTMICRO argues that the NDCA does not have any familiarity with the asserted patents through the two prior declaratory judgment actions in that district because both cases were stayed pending resolution of an ITC investigation and dismissed before the court resolved any substantive issues. *Id.* at 7.

Because of the co-pending KIOXIA Litigation, the Court finds that this factor weighs against transfer. While the KIOXIA Litigation involves different defendants and different accused products, the two cases will likely involve overlapping issues of claim construction and patent validity. The Court concludes that judicial resources may be conserved if one court were able to resolve the common issues in both cases. *In re Intel Corp.*, Nos. 2021-168, 2021-169, 2021 WL 4427875, at * (Fed. Cir. Sept. 27, 2021) ("The district court also reasonably found that keeping the cases against Samsung and Intel before one court could preserve judicial economy and minimize the potential for inconsistent judgments."). With respect to the two prior declaratory judgment actions in the NDCA, the Court finds that the NDCA's past experience with the asserted patents does not weigh in favor of transfer. Because both cases have been dismissed, there is no opportunity for a court in the NDCA to resolve common issues in this case and the declaratory judgment actions together. Further, the NDCA did not resolve any substantive issues before the actions were dismissed.

Thus, the Court finds that this factor weighs against transfer.

**B.  The Public Interest Factors**

    *i.*    ***Administrative Difficulties Flowing from Court Congestion***

       This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

       Intel argues that this factor is neutral because there are no significant differences in time-to-trial statistics between the two forums. ECF No. 22 at 15. Intel claims that the time to trial in the NDCA is only a few months longer than this District. *Id.*; ECF No. 22-31 (median time to trial is 28.3 months in the WDTX and 34.7 months in the NDCA). In response, BiTMICRO argues that this factor weighs against transfer because Intel has failed to show that the NDCA would reach trial faster than this Court. ECF No. 34 at 7. BiTMICRO argues that this Court has historically been able to reach trial faster than the NDCA. *Id.*

       While the Federal Circuit has previously held that there are "no significant differences in caseload or time-to-trial statistics" between the WDTX and the NDCA, *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021), recent statistics show that this Court has been able to bring cases to trial within two years.[1] Both parties agree that time to trial in this District is faster

---

[1] *See, e.g., MV3 Partners v. Roku, Inc.,* 6:18-cv-00308-ADA (W.D. Tex., filed Oct. 16, 2018) (23.7 months from case filing to trial); *CloudofChange, LLC, v. NCR Corp.*, No. 6:19-cv-00513-ADA (W.D. Tex., filed August 30, 2019) (20.3 months from case filing to trial); *VLSI Tech. LLC v. Intel Corp.*, No. 6:21-cv-00057-ADA (W.D. Tex., filed Apr. 11, 2019) (22.4 months from case filing to trial); *Freshub, Inc. v. Amazon.Com Inc.*, No. 6:21-cv-00511-ADA (W.D. Tex., filed Jun. 24, 2019) (23.7 months from case filing to trial); *ESW Holdings, Inc. v. Roku, Inc.*, No. 6:19-cv-00044-ADA (W.D. Tex., filed Feb. 8, 2019) (25.9 months from case filing to trial); *Profectus Tech. LLC v. Google LLC*, 6:20-cv-00101-ADA (W.D. Tex., filed Feb. 10, 2020) (19.6 months from case filing to trial); *Jiaxing Super Lighting v. CH Lighting Tech.*, 6:20-cv-00018-ADA (W.D. Tex., filed Jan. 10, 2020) (21.7 months from case filing to trial); *VideoShare LLC v. Google LLC*, 6:19-cv-663-ADA (W.D. Tex., filed Nov. 15, 2019) (23.8 months

than the NDCA. ECF No. 22 at 15; ECF No. 37 at 5. The Federal Circuit has underscored the importance of rapid disposition of patent cases. *Kahn v. Gen. Motors Corp.*, 889 F.2d 1078, 1080 (Fed. Cir. 1989). It has even acknowledged Congress's interest in the "quick" resolution of patent disputes. *See, e.g.*, *Ethicon Endo-Surgery, Inc. v. Covidien LP*, 826 F.3d 1366, 1367 (Fed. Cir. 2016). In view of Federal Circuit law and the available time-to-trial statistics, the Court finds this factor weighs slightly against transfer.

### ii. *Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum

---

from case filing to trial); *NCS Multistage Inc. v. Nine Energy Serv.'s, Inc.*, No. 6:20-cv-00277-ADA (W.D. Tex., filed Mar. 24, 2020) (21.8 months from case filing to trial); *EcoFactor, Inc. v. Google LLC*, No. 6:20-cv-00075-ADA (W.D. Tex., filed Jan. 31, 2020) (24 months from case filing to trial); *Densys Ltd. v. 3Shape Trio A/S*, 6:19-cv-00680-ADA (W.D. Tex., filed Nov. 26, 2019) (28.3 months from case filing to trial); *Appliance Computing III, Inc. v. Redfin Corp.*, No. 6:20-cv-00376-ADA (W.D. Tex., filed May 11, 2020) (24 months from case filing to trial); *Caddo Sys. Inc., v. Microchip Tech. Inc.*, No. 6:20-cv-00245-ADA (W.D. Tex., filed March 27, 2020) (26.5 months from case filing to trial); *SunStone Information Def., Inc. v. International Bus. Machines Corp.*, No. 6:20-cv-1033-ADA (W.D. Tex., filed Nov. 9, 2020) (21.0 months from case filing to trial); *NCS Multistage Inc. v. TCO Products Inc.*, No. 6:20-cv-00622-ADA (W.D. Tex., filed Sept. 9, 2020) (23.4 months from case filing to trial); *Ravgen, Inc. v. Lab. Corp. of Am. Holdings*, No. 6:20-cv-00969-ADA (W.D. Tex. filed Nov. 16, 2020) (23.1 months from case filing to trial).

that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

Intel argues that this factor favors transfer because many of the named inventors and former BitMicro Networks employees reside in the NDCA. ECF No. 22 at 14. Further, Intel argues that Intel employees in the NDCA were involved in designing, developing, maintaining, and managing the accused features. *Id.* In response, BiTMICRO argues that this factor weighs against transfer because of Intel's significant presence in the WDTX. ECF No. 34 at 9. BiTMICRO further argues that Intel's "top tier" customers are located in this District. *Id.* And while it admits that two of the named inventors are in the NDCA, BiTMICRO notes that two others are likely located in the WDTX. *Id.*

Since the inventors of the asserted patents likely reside in both districts, the Court concludes that the presence of inventors in either forum does not weigh heavily in the analysis of this factor. *See supra* Section III(A)(iii). Intel's general presence in this District also does not weigh in the analysis of this factor. *In re Apple*, 979 F.3d at 1344. As for Intel's local interest, because some development of the accused products took place in the NDCA, the Court concludes that this factor weighs at least slightly in favor of transfer. Intel explains that teams involved in the development of the accused Optane SSD product, Optane Persistent Memory feature, RAID product, and Stratix 10 functionality are located in the NDCA. ECF No. 22 at 7−9. However, the Court notes that Intel has admitted that relevant employees that work on the accused Stratix 10

functionality reside in this District. ECF No. 22 at 9. This case "calls into question the work and reputation" of Intel's employees in the NDCA and the WDTX. *In re Hoffman-La Roche Inc.*, 587 F.3d at 1336. But the Court concludes that this factor weighs at least slightly in favor of transfer because a greater number of relevant Intel employees appear to reside in the NDCA.

Because the NDCA likely has a greater local interest in this litigation than the WDTX, the Court finds that this factor weighs slightly in favor of transfer.

### iii.    *Familiarity of the Forum with the Law That will Govern the Case*

BiTMICRO argues that this factor weighs against transfer based on this Court's experience with patent cases. ECF No. 34 at 8. In its reply, Intel argues that this factor is neutral. ECF No. 37 at 5. The Court agrees with Intel. As this Court has previously stated, "[b]oth districts are familiar with the uniform body of federal patent law." *VoIP-Pal.com, Inc. v. Google LLC*, No. 6:20-cv-00269-ADA, 2022 WL 4546553, at *8 (W.D. Tex. Sept. 28, 2022). The Court finds that this factor is neutral.

### iv.    *Avoidance of Unnecessary Problems of Conflict of Laws or in the Application of Foreign Law*

Intel and BiTMICRO agree that this factor is neutral—there are no potential conflicts here. ECF No. 22 at 15; ECF No. 34. The Court agrees.

### IV.    CONCLUSION

Having considered the private and public interest factors, the Court finds that four of the factors favor transfer, two disfavor transfer, and two factors are neutral. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a clearly more convenient forum. Here, the practical problems and court congestion factors weigh against transfer. The sources of proof, willing witness, compulsory process, and local interest factors weigh in favor of transfer to the NDCA.

The Court finds that Intel has met its burden of showing that the NDCA is a clearly more convenient forum. The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Cost of attendance for willing witnesses | Favors transfer |
| Relative ease of access to sources of proof | Slightly favors transfer |
| Availability of compulsory process to secure the attendance of witnesses | Favors transfer |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Weighs against transfer |
| Administrative difficulties flowing from court congestion | Slightly against transfer |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

**IT IS THEREFORE ORDERED** that Intel's Motion to Transfer Venue to the Northern District of California is **GRANTED** (ECF No. 22).

**SIGNED** this 10th day of February, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE